RODNEY E. BROWN
NAME

D.22973
PRISON IDENTIFICATION/BOOKING NO.

CALIF. CORRECTIONAL INSTITUTION (CCI)
ADDRESS OR PLACE OF CONFINEMENT

P.O. BOX 107; Tehachapi, CALIF. 93581

Note:  It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his or her name, address, telephone and facsimile numbers, and e-mail address.



Fee Due

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

RODNEYEARL BROWN
FULL NAME (*Include name under which you were convicted*)

Petitioner,

v.

BRIAN CATE (PRISON WARDEN); and
KATHLEEN ALLISON (SECT. OF CDCR).

NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

CV  **5:21-CV-01449-JFW-JEM**
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

### PETITION FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY
### 28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION SAN BERNARDINO
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(*List by case number*)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.  To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.  In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3.  Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.  Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.  You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.  You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.  When you have completed the form, send the original and two copies to the following address:

> Clerk of the United States District Court for the Central District of California
> United States Courthouse
> ATTN: Intake/Docket Section
> 255 East Temple Street, Suite TS-134
> Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING (*check appropriate number*):

This petition concerns:
1.  [x] a conviction and/or sentence.
2.  [ ] prison discipline.
3.  [x] a parole problem.
4.  [ ] other.

**PETITION**

1.  Venue

    a.  Place of detention ___CALIFORNIA CORRECTIONAL INSTITUTION (KERN COUNTY) TEHACHAPI, CALIF.___

    b.  Place of conviction and sentence ___SUPERIOR COURT OF SAN BERNARDINO CALIF.___

2.  Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).

    a.  Nature of offenses involved (*include all counts*) : ___P.C. §29900(A) POSSESSION OF FIREARM W'Prior Conviction (Parole Violation on Murder Charge PC§187 Second Degree. in 1986 Paroled in December 17, 2012.___

    b.  Penal or other code section or sections: _____

    _____

    _____

    c.  Case number: ___FWV1502775___

    d.  Date of conviction: ___July 20,2016___

    e.  Date of sentence: ___2 years X 2= 4 years___

    f.  Length of sentence on each count: ___4 years new charge, 15 to life on Paroled Charge. RETAINING PETITIONER ON PAROLE BEYOND THE UNDERLYING OFFENSE.___

    g.  Plea (*check one*) :   NO LONO CONTENDRE
        - [ ] Not guilty
        - [ ] Guilty
        - [x] Nolo contendere

    h.  Kind of trial (*check one*):
        - [ ] Jury
        - [x] Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?   [ ] Yes  [x] No

    If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

    a.  Case number: ___SAME AS ABOVE (HABEAS CORPUS) NOT APPEAL___

    b.  Grounds raised (*list each*):

        (1) ___BREACH OF PLEA AGREEMENT, EXCESSIVE PUNISHMENT BEYOND THE PLEA;___

        (2) ___EX POST FACTO VIOLATIONS ERRONEOUS APPLICATION OF STATE LAW;___

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

b.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

    (5) Date of decision: _____

    (6) Result _____

    (7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

c.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

7.  Did you file a petition for certiorari in the United States Supreme Court?        ☐ Yes        ☐ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

8.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the <u>facts</u> supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:    *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

a.  Ground one: <u>BREACH OF PLEA AGREEMENT EXCESSIVE PUNISHMENT BEYOND PLEA;</u>

_____

(1) Supporting FACTS:   <u>Petitioner attached  complaint titled FACTUAL ALLEGATIONS</u>

<u>pages 3 to 32</u>

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?      ☒ Yes   ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☒ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☒ Yes   ☐ No

b.  Ground two:   <u>EX POST FACTO VIOLATIONS ERRONEOUS APPLICATION OF LAWS</u>

_____

(1) Supporting FACTS:   <u>SEE COMPLAINT AT PAGES 3-32 "FACTUAL ALLEGATIONS.</u>

<u>TO MUCH TO LIST</u>

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☒ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☒ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☒ Yes  ☐ No

c. Ground three: ARBITRARY DECISION BY BOARD OF PAROLE HEARINGS

(1) Supporting FACTS: TOO MUCH TO LIST

SEE COMPLAINT AT "FACTUAL ALLEGATIONS" 3-32.

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☒ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☒ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☒ Yes  ☐ No

d. Ground four: _____

(1) Supporting FACTS: _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes  ☐ No

e. Ground five: _____

(1) Supporting FACTS: _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes  ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☐ Yes     ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes     ☐ No

9. If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes     ☒ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?     ☐ Yes ☐ No

b.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?    ☐ Yes ☐ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?    ☐ Yes ☒ No

If so, provide name, address and telephone number:  ACTING IN PRO SE.

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on   8·23·2021          *Rodney E Brown*
          *Date*          *Signature of Petitioner*
                 RODNEY E. BROWN

CALIFORNIA CORRECTIONAL INSTITUTION
RODNEY E. BROWN, CDCR# D-22973
FACILITY (E) WILLARD HALL,
P.O. BOX 107; TEHACHAPI, CALIF. 93581.
PETITIONER IN PRO SE.



FILED
CLERK, U.S. DISTRICT COURT

AUG 25 2021

CENTRAL DISTRICT OF CALIFORNIA
BY        KMH        DEPUTY

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

RODNEY E. BROWN,
PETITIONER,

vs.

BRIAN CATE (WARDEN);
KATHLEEN ALLISON (SECT. CDCR)

)CASE NO.: 5:21-CV-01449-JFW-JEM
)PETITION FOR WRIT OF HABEAS CORPUS, COMPLAINT
)AND FACTUAL ALLEGATIONS, SUPPORTED BY AFFIDAVIT
)UNDER OATH.
)[PETITIONER REQUESTS FOR EVIDENTIARY HEARING
)TO DEVELOPE THE FACTS OF THE COMPLAINT TO
)ESTABLISH ADEQUATE PRIMA FACIE CAUSE.] CAL.
CONST., ART. IV, §10; Art. I, §11. Penal Code,
§1473 Walker (1974) 10 C3d 764, 773.

I. UNLAWFUL RESTRAINT

1.    The Petitioner alleges that his confinement and or restriction
is unlawful and in violation of the State of California and United
States Constitutions as established within the body of the complaint.
Penal Code §1474.  Whereby Petitioner's restraint is unlawful, and
is wrongfully held--in confinement by WARDEN:  W.J. SULLIVAN at Califo-
rnia Correctional Institution at Tehachapi Calif. P.O. BOX 107; 93681.

2.    Petitioner's unlawful  restraint is premised upon illegal process
in "PAROLE ROVOCATION" and "PAROLE REVIEW" and "PAROLE REINSTATEMENT."
Accordingly, Petitioner suffers Board of Parole Members, exercising
their PAROLE REVIEW PROCESS arbitrarily and with discrimination and
capricious influences, using the incorrect standards of process to
ensure that Petitioner is denied being REINSTATED on his parole.
More so, Board Of Parole Hearings (BPH) had been exercising a retaliation
against Petitioner, and denying parole to execute personal interests
instead of legally sound proceedings. The proceedings and methods
used denying parole is incompetent, abusive and performed in ill-will
against Petitioner, disregarding the correct standards of law, and
proceeding in their own incompetent process which violates the law
and constitution. Due to the unlawfulness of their ongoing process,
Petitioner's restraint becomes unlawful, and unconstitutional, as
the restraint is maintained in violation of law and constitution and
additional infringes upon the Petitioner's Plea agreement contract
and thus constituting a BREACH OF PLEA CONTRACT that ultimately nullifies
the plea and the conviction for charged offense on plea is legally
invalidated for breach of contract. Petitioner accepted the plea agr-
eement under the FALSE PRETENSE by the Prosecutor that accepting the
plea would subject Petitioner to serve time on new offense, and then
become reinstated on parole. Had Petitioner been advised that accepting
the plea agreement would subject him to his original life sentence,
he would have fought the charges and went to trial since LIFE IN PRISON
is what he faces no matter what. And if he prevailed against his new
offenses he would not face LIFE IN PRISON. He was falsely lead to
believe that after serving the sentence under the Plea agreement,
he would be REINSTATED not face LIFER PAROLE PROCESS under a wrongful

1

parole determination process, where he would normally be under original
parole determination process as to §3000.1 under Title 15. Calif. Code
of Regs. BPH members are using other inapplicable processes as defined
in the body of the Factual allegations of the complaint. Accordingly,
the petitioner's detainment/restraint is unlawful and thereby, the
conviction, sentence, and parole must be corrected by granting the
provisions of relief requested in the complaint.

3.    Additionally, there is no procedural bar to the relief Petitioner
seeks in this complaint. Because no process can legally by applied
to an unlawful restraint or detainment. The Breach of contract (PLEA)
is invalid and thereby constitutes a˙ nullified plea, sentence, and
conviction. Further, there is no procedural bar to relief, because
The process in which the BPH used to deny Petitioner's parole is ill-
egal, arbitrary, capricious, and discriminatory, in which violates
Petitioner's substantial rights.

4.    Petitioner is a prisoner unlawfully detained at: CALIFORNIA
CORRECTIONAL INSTITUTION, FACILITY (E). P.O. BOX 107; TEHACHAPI, CALIF.
93581.

5.    The court Order that led to the Petitioner's restraint was that
he accept a plea agreement for POSSESSION OF A FIREARM W/PRIOR CONVIC-
TION for the mid-term of two-years in state prison. Under this agreement
Petitioner was led to believe that by accepting this plea deal, that
after he served the sentence for the TWO-YEARS that he would be rein-
stated, and not suffer a LIFE SENTENCE, otherwise would have not accepted
a plea agreement at all. Plea taken on Jul.20, 2016.

6.    The reason this Petition is properly before the Court is as follows:
A) The Petitioner's restaint is unlawful, and the interests of justice
requires that all convictions in the United States and California
shall be in good standing with law and constitution. ILLEGAL CONVICTION
AND OR DETAINMENT/RESTRAINT must be˙corrected in the interests of
justice.  B) The Board of Parole Hearings is retaliating against Peti-
tioner denying parole, (HOLDING PAROLE RANSOME) to further their personal
interests, and violating Petitioner's rights to a true and correct
parole determination process at the very least. And C) The State of
California and the United States Constitutions, remain in fundamental
violation of the laws and constitutions until˙ this Court correct
the errors of constitutional dimensions in which prejudice results
therefrom.

7.    There is no plain, speedy, and adequate remedy at law. Except
but for  the  remedy presented herein.

8.    There are no previous petitions filed in any court, but for a
42 U.S.C. §1983 Civil Rights Action, regarding violations of civil
rights. Not the Same as herein.

9.    Accordingly based upon the last parole denial which manifested
factual violations as stated in the complaint, This Petition is TIMELY;
and as to the eariler parole hearings˙the delay in raising the petition
is based upon the fact, that Petitioner was under the belief that
at some point the BPH would stop their personal interest denials,
and finally follow the law. Upon the third denial and violations as
defined in the complaint, the violations as herein became finalized
and thus, warrants action as presented herein. The full capacity of

the habeas corpus is timely; and any delay is justified.

10. All administaive remedies have been exhausted.

11. The following is the factual allegations, legal claims, prayer for relief with the factual predicate. The petition also includes a verification and the documents contain a supporting memorandum and exhibits, and proof of service.

## II. INTERESTED PARTIES

12. The petitioner identifies the responding parties of interest as: A) PRISON WARDEN, W. J. SULLIVAN; B) THE PEOPLE OF CALIF. (DISTRICT ATTORNEY); AND C) THE COURT LEADING THE RESTRAINT, OF LIBERTY.

## III. TIMELINESS OF PETITION

13. There are no statutory or other specific time limits for filing a petition for writ of habeas corpus. As a rule, however, it should be filed as soon as practicable after discovery of the claim. The Petitioner has not made any unreasonable delay in seeking relief, as last review by BPH was where the claims herein became affirmative or otherwise discovered; which was on NOVEMBER 21, 2019. This Petition is not due till November 21, 2020. As to the previous years of parole violations, which are primarily facts that establish a pattern by the defendants, means that up to November 2019 that Petitioner became aware or discovery of the claims as established in the complaint. Accordingly, this Petition is timely; and does not fall under any unreasonable delay, because the violations could only be manifested after the violations of 2017, 2018, and 2019 as a whole to identify the violative patterns and claims as herein. And this petition was filed as promptly as the circumstances allow. In re Douglas (2011) 200 CA 4th 236, 242, quoting Clark, 5 C4th at 765 n21. See also, Gomez v. Superior Court (2012) 54 C4th 293, 309. Additionally Petitioner alleges there was no substantial delay; there was good cause for the delay; and an exception applies for permitting an untimely petition. In re Reno (2012) 55 C 4th 428, 460; In re Sanders (1999) 21 C4th 697, 703. The good cause for delay, is that, although the issues of denial of parole ocurred at the years 2017, 2018, the pattern of the cause for this complaint and claims could have not been discovered or known till the third time in 2019 ocurred, that finally presents a prima facie case of the issues involved, that amount to violations of the complaint as a whole. Previously, the violations where not complaint till November 2019. That makes this Petition timely since the time due to file would be November 2020, while as early as April 2020 Plaintiff files the complaint.

## IV. FACTUAL ALLEGATIONS

14. In 1983 Petitioner was arrested for Murder and was convicted of murder in 1986. Petitioner was sentenced to 15 years to life in State Prison.

15. On December 17, 2012 The Board of Parole Hearings found petitioner suitable after spending 26 years in prison and thereby granted him parole.

16. While on parole petition demonstrated sufficient and meaningful compliance and was having a good transition and adjustment to society. Petitioner maintained a stable job, stable residence, and cooperated with his parole agent.

17. While petitioner was adjusting to transition, he became aware of suspect behavior between his biological son and his wife who is the son's biological mother. Petitioner believed that they were having an incestive sexual affair, with each other.

18. In addition to this sexual affair, Petitioner's son reported to his father that other mexican young men were making threats on the Petitioner's son's life. Due to street law with violent gangs in California, calling the police on one, while the others execute retaliation harmining (POTENTIALLY) the whole family or burning their house down while they were still in their home. Petitioner feared to call the police.

19. Scared for their lives, Petitioner borrowed a gun from his friend for protection against the threatening group.

20. Sometime later petitioner placed a device in his and his wife's bedroom, due to his suspicion of her having a sexual affair with their biological son. At some point, petitioner retrieved the device and heard his wife making sexual remarks on the recording, and knew only their son was at home.

21. Distraught petitioner confronted his wife with gun in hand and asked questions regarding her having an affair with their son. He did not point the gun at her at any time.

22. While petitioner was talking with his wife, their son Rodney Jr. entered the room. Petitioner pointed the gun at him and said "GET OUT OF HERE."

CIRCUMSTANCES OF CHARGES

23.  On 07/18/2015 Rialto Police Department Officer Zirkle and his partner Corporal Blleweg were assigned to the Uniform Patrol when they received a dispatch to the residence located at 479 W. Lurelane Street, in reference to someone "brandishing a firearm." While in rout the officers were informed that the reporting party had changed location because the husband had pulled a shotgun on her and her son and were now in a vehicle waiting at the intersection of Walnut just east of Lilac Ave. The reporting party Ruthy was contacted by the officers and she advised the officers that on 7/18/2015 her husband had walked into her bedroom holding a shotgun, pointed it at her, and told her to tell him the truth about what's going on with their son Rodney Jr. He then accused her of having a sexual affair with their son and threatened to kill them both with the shotgun.  She stated that she was not sure if her husband Rodney Brown was still at the home. She provided a description of the petitioner's vehicle and ..; as she was doing so, Petitioner Rodney Brown drove by in his car. The officers rushed back to their patrol car and conducted a traffic stop of Rodney Brown in his vehicle. Ruthy Brown was contacted to respond to the location of the traffic stop to positively identify whether the black male adult in custody was her husband who had threatened to kill her and their son. She identified her husband Rodney Brown who threatened to kill her and her son while holding a shotgun. Rodney Brown was then arrested and booked into the Rialto Police Department and then West Valley Detention Center without further incident.

24.  On 07/24/2015 Probable Cause was Found and Court Preliminary Revoked Parole Supervison.

24.  On 07/24/15 Parties were notified.

5

26.  On 07/24/2015 Petition for Revocation of parole received.

27.  On 07/24/2015 New filed case.

28.  On 07/24/2015 Arraignment on Petition for Parole violation 91:30PM) (Judicial Officer: Gericke, James Robert) Continued court's motion; Plea (Judicial Officer: Pro Tem, Judge) 1. PC3056-F: Violation of Parole Felony (Not Guilty). Charge #:001 Allegation.

29.  Dispo/Reset (2:00PM)(Judicial Officer: Gericke, James Robert) Continued Court's motion. (ON 08/10/2015).

30. On 07/20/2016, Petitioner entered into the plea, and the court held: " Defendant waives right to have a formal hearing, to present evidence, cross-examine witnesses, subpoena witnesses, and to remain silent. Defendant advised of his/her rights.; Defendant admits allegation(s) of violation of Parole Supervison as to term(s): 5 (possession of a firearm) The Court makes no finding as to any other allegations of Parole violation.; Parole Supervison is REINSTATED Parole Supervison is continued on original terms and Conditions with the following modification(s):. Defendant accepts modifications of terms and conditions. Defendant ordered to report to Parole Office within 24 hours of release from custody."(EXHIBT-[1]: 1 page. MINUTE ORDER PAGE 8 of 9).

31.  Parole notified.

32.  On 07/20/2016:  Defendant waived right to jury by trial; Defense counsel concurred in Defense PLEA OR ADMISSION; Defendant advised of charges and direct consequences of plea (lacking the fact that petitioner was reinstated on parole); Conviction certified by the Clerk of the Court; Defendant waived rights to confront and cross examine witnesses; and Court found plea was knowledgeable, intelligently made.

33.  Petitioner was misled to believe that the his acceptance of a plea agreement would not subject him to a life sentence. Via, the rein-

statement of his Parole Supervision, is an indicator that Petitioner
is under the mindset that, after serving his plea agreement term of
two years, he would in fact receive the Court Ordered REINSTATEMENT
OF PAROLE. This was the primary reason why Petitioner accepted the
plea agreement.

34. Because Petitioner remains unlawfully restrained beyond his Court
Order for reinstated parole, the plea agreement becomes BREACHED as
a breach of contract. As the Prosecutor failed to uphold the government's
promise to reinstate petitioner on parole after serving the plea agree-
ment sentence.

BOARD OF PAROLE HEARINGS, ARBITRARY---PROCEEDINGS

35. The proceedings were incompetent regarding the BPH determination
process, and also demonstrated personal hate toward Petitioner, where
the BPH members personally made improper comments off record with Peti-
itioner, as to him DISRESPECTING the Parole members that originally
granted his Parole in 2012; As stating: "I PERSONALLY KNOW THE PAROLE
MEMBERS THAT LET YOU OUT. YOU DISRESPECT THEM, YOU DISREPECT US. YOUR
NOT GOING TO GET OUT ANY TIME SOON." (Deputy Commissioner Garcia.)
Stated on November 21, 2019.

36. On November 21, 2019, Deputy Commissioner Garcia also stated off
the record: "YOU FAILED TO PROTECT YOUR SON, AND YOU ALLOWED HIM TO
BE MOLESTED, YOU DID NOT CALL THE POLICE AND MAKE A REPORT, THAT YOUR
WIFE WAS HAVING SEX WITH A MINOR." Deputy Commissioner Gutierrez also
was standing there agreeing with Garcia, as if Petitioner was being
prosecuted for a crime that his wife committed.

37. On November 21, 2019 at 11:07 a.m. The following took place at
petitioner's parole annual parole review. COMMISSIONER GUTIERREZ:

"All right. We are on the record. And today's date is November 21, 2019, and the time is approxiately 11:07 a.m.  This is an annual parole reconsideration hearing held under Penal Code Section 3000.1, for Mr. Rodney Brown, CDCR number D-22973, who is present in the hearing room at California Correctional Institution in Tehachapi, California. Mr. Brown was originally received on February 3, 1986, from the County of Los Angeles. The controlling offense in this case is second degree murder, arising from a conviction in Case number 8392650, and resulting in a sentence of life without parole. Mr. Brown paroled on December 17, 2012."

38.  PETITIONER: "No, ma'am, excuse me. Not life without, 15 to life."

39.  GUTIERREZ: "Yes. Your third reconsideration hearing. So do you remember what they asked you to work on, on your last hearing?"

39.  PETITIONER: "YES."

40.  GUTIERREZ:  "WHAT WAS THAT?"

41.  PETITIONER:  "THEY SAID TO WORK ON, UH, GUNS, RELATIONSHIP, UH, DECISION AND JUDGMENT."

COMMISSIONER GARCIA RECONVICTS PETITIONER:

" -- uh, What are all of the crimes that you committed?" (2019-page 41).

42.  "The  first crime I committed was when I violated my condition. The thought process of even getting a gun, I considered, was an internal crime."

43.  GARCIA:  "Well, no. Well, we -- we can talk about that."

44.  PETITIONER: "Mm-humm."

45.  GARCIA:  "But -- but what actual crimes did you commit?"

46.  PETITIONER:  "I committed, uhm possessing a gun, arming, usage of a gun." -

47: GARCIA: "What was the second thing you said?" (ALL PAGE 41).

ALSO PAGE 41,

48. PETITIONER: "Arming. Arming. A-R-M-I-N-G."

PAGE 42:

49. GARCIA: "ARMING?"

50. PETITIONER: "Arming, usage."

51. GARCIA: "Are - are you referring to the -- to the shotgun?"

52. PETITIONER: "Yes."

53. GARCIA: "Did you have a firearm before that?"

54. PETITIONER: "No. Never had a firearm before that."

55. GARCIA: "Well, after parole."

56. PETITIONER: "Oh, that was the only time I ever had a gun. That's the only violation I ended up they had, was when I left the drug treat-ment center violation. Other than that, no other violation. I never touched a gun."

57. GARCIA: "Okay. So then the possession of the gun, uh, you said, arming. I'm not sure what charge that is"

58. PETITIONER: "Okay, it -"

59. GARCIA: "Okay. What else?"

60. PETITIONER:"Uh, usage. I consider that the usage of the gun."

61. GARCIA: "Okay. Use of a firearm?"

62. PETITIONER: "Yes."

63. GARCIA: "Okay."

PAGE 43:

64. PETITIONER: "Yes."

65. GARCIA: "That's what you mean by arming?"

66. PETITIONER: "Yes."

67. GARCIA: "Okay. All right. Anything else?"

68.   PETITIONER:  "Brandishing."

69.   GARCIA:  "Brandishing the firearm?"

70.   PETITIONER:  "Yes, yes."

71.   GARCIA:  "Anything else?"

72.   PETITIONER:"Can - I can -- I Considered threatening."

73.   GARCIA:  "Making criminal threats?"

74.   PETITIONER:  "I didn't -- I considered the threatening of the
gun."

75.   GARCIA:  "Year, it -- it was."

76.   PETITIONER:  "Yes."

77.   GARCIA:  "Yeah. Anything else?"

78.   PETITIONER:  "Not that I know of."

79.   GARCIA:  "There was any other charge that you did? So -- so you
put the gun up to your -- your son?"

     PAGE 44:

80.   PETITIONER:  "I brandished the gun at my son."

81.   GARCIA:  "You put the gun up to your wife?"

82.   PETITIONER:  "No"

83.   GARCIA:  "Um, okay.  So, uh, do you think you committed domestic
violence?"

84.   "Oh, yeah. Most definitely.  Yes, sir. 100%."

85.   GARCIA:  "Domestic violence is a crime."

86.   PETITIONER:   "Yes."

87.   GARCIA: "Okay. It could -- could be a misdemeanor, or it could
be a felony -"

88.   PETITIONER:  "Yes."

89.   GARCIA "--depending on the -- degree, right?"

90. PETITIONER: "Yes."

91. GARCIA: "Um, anything else you can think of?  Any other crimes you that -- that you committed?"

92. "Leaving the scene, leaving the house."

93. GARCIA: "You didn't flee the police?"

94. PETITIONER: "No, I didn't flee the police."

   PAGE 45:

95. GARCIA: "Okay.  Um, did you -- did you have the situation where you actually brandished the gun, uh, to the other people that were harassing your son?"

96. PETITIONER: "No, I never used the gun at all towards anybody."

97. GARCIA: "Towards them?"

98. PETITIONER: "Yes."

99. GARCIA: "Okay.  Um, all right.  So you have possession of a gun, use of a firearm, brandishing a firearm, criminal threats, and then there's some domestic violence element to that. And then ultimately, you were charged with possession of a firearm."

100. PETITIONER: 'Yes."

101. GARCIA: "Um, do you believe that you could have been convicted for all those things?"

102. PETITIONER: "Yes."

103. GARCIA: "All right.  Um, do you believe that in any way you were justified because of the circumstances of your son and your wife, uh, being in a relationship?"

104. PETITIONER: "No."

105. GARCIA: "Um, what - what --"

   PAGE 46.

106. GARCIA: "what did -- what did you lear from all this?"

11

THE DISTRICT ATTORNEY (DEPUTY) IS DISCRIMINATIVE:

107. CIVITATE:  "Thank you. I'm absolutely appalled that Mr. Brown,
when he said at the beginning, that he came out of prison with an anti-
police mentality, which he developed while he was incarcerated. After
30 years in prison, where he got every break the system allows, going
from LWOP to first-degree and then second-degree, comes out with an
anti-police mentality. What did he learn in all these years and how
did he qualify for parole? So then we go--" (PAGE 66);

PAGE 67:

"through all these thing about he participated. Uh, he had to talk
-- learn about relationships and -- but I think the Commissioner made
a very cogent point, at a certain point in here, by saying that he
was being very generic. Because right at that time, I was writing
down that he talks in general terms, nothing specific. I Think the
subject at the time was how he'd cope and just general, nothing specific.
Furthermore, he talks about asking himself, why is he like this? Why
is he entitled? And then near the end even, why did he think he had
a right to get a gun after 30 years in prison? But he had no answers.
So we don't really know what's going on internally. And we don't really
know if he's internalized the self-help because what he says so far
is mainly external. And it was interesting at the  very end that,
after 30 years in state prison, he said he was born with a second amend-
ment right as an American, as a birthright to have a gun, and then
it was taken away. I just don't see that he's ready for parole. I
know he's working on it, and I know that he's got a lot of information
going on in there. But it's not internalized,  and he's not able to
look at it specifically. So with that in mind, I think he should be
denied."

12

108. The District Attorney that offered the plea deal to Petitioner and had petitioner plead guilty to the gun charge, represented the plea agreement under false pretenses that Petitioner would be reinstated on parole after .; he served the plea bargain time. Herein after several — years beyond the plea bargain time, the very same District Attorney's Office that Made the contract with Petitioner as stated above, Breaches the contract, to continue his incarceration unlawfully. This constitutes Malicious Prosecution.

109. Additionally, The Defense Counsel representing Petitioner, IYAYI had failed to make important objections regarding the issues that were happening, and to redirect the issues back to the issues of the actual case in chief. such as:

A)    OBJECT TO THE COMMISSIONER ASKING PETITIONER QUESTIONS ABOUT WHAT OTHER CRIMINAL OFFENSES HE COMMITTED. HE WAS PLEAD OUT ON A SINGLE CHARGE, AND NOT FOUND GUILTY UPON ANY OTHER CRIMINAL FACTOR OR ELEMENT, BESIDE THE GUN POSSESSION CHARGE. AND THEREBY, HERE PETITIONER WAS CONVICTED FOR THE CHARGES IN THE ABSENCE OF TRIAL BY JURY. THIS FACTOR PLAYED A SIGNIFICANT ROLE IN THE DECISION OR EXCUSE TO DENY PAROLE. Counsel was fundamentally ineffective and allowed the Petitioner to be subjected to off the record issues that was not part of the case, to be used as aggravating factors against him.

B)    Counsel failed to explain, that under the Constitution, U.S. Citizens are born with a second amendment right to own guns. And that in the context that Petitioner was explaining, was that he realizes that he had no right under the 2nd Amend. As an ex-felon; and

C)    Counsel failed to express that Petitioner's anti-police concept, was based on the concept, that Petitioner barely received any "EVERY BREAK  THE SYSTEM ALLOWS" when he did 30 years on a 15 year sentence;

And the LWOP and first-degree issue was earned not given as a break from the system. Petitioner was in Maximum security prisons in California which in his time, suffered corrupt correctional officers who brought in drugs,  and weapons, ordered hits on inmate on inmates, was known as the Greenwall a Prison Correctional Officer GANG that enforced gladiator fights by inmates, that were tied and linked to bringing in phones, and creating extreme criminal atmospheres; and through all that, the Petitioner made it through, and successfully rehabilitated himself, earning lots and lots of program certificates, and avoided serious conflicts with Correctional Officers, who were the cause for anti police behavior. In which what Petitioner called anti police truely reflects that he actually FEARED CALLING THE POLICE.

110. The outlook upon the issues as defined herein, are erroneous, and thereby the wrong information was manifested, the wrong questions were asked, the wrong standard of review was performed and the wrong legal applications were applied to Petitioner's case. Additionally, the Cause and reason for the above wrongful process implemented upon Petitioner was to manifest an excuse to justify their personal interests to deny his parole, because Petitioner "disrespected" all the Parole Commissioners. By comming back to prison after obtaining a parole.

THE ERRONEOUS DENIAL OF PAROLE DECISON:

I11. GUTIERREZ: "Presiding Commissioner Guiterrez:  Okay, we're back on the record. The time is 12:33 p.m. We have reconvened for pronouncement of the panel's decision. All persons previously present prior to the break have returned. The fundamental consideration in an annual parole consideration hearing is whether the inmate continues to pose a current unreasonable threat to public safety upon the inmate's release. Accordingly, a denial of parole must be based upon evidence in the

14

record of the inmate's current dangerousness. Having these legal stand-
ards in mind, we find that Mr. Brown does pose an unreasonable risk
of danger to society or a threat to public safety and is therefore
ineligible for parole today.  The Panel dis -- based its decision on
the following reasons. Mr. Brown, we do see that you have matured on
your part. However, there are still, uh, deep concerns for us, and
one of them being that you have a general disregard for following the
laws. And there's three different specific  reasons. One is the weapon.
You still need to keep digging deeper into your causative factors.
What is it about you that that you're willing to take the law into
your own hands, right?  Knowing that you were on parole, and you went
and got a shotgun and get I get it.  You know uh, you -- you were
concern for your son's safety. However, you continued that theme by
not even reporting the threats, right?  So you said you intended to
kill those boys to protect your son.  I mean, you've already murdered
someone in the past. So why would you want to repeat the same thing
again?  So that's what it means  to dig into your causative factors.
What is it about you inside that you're willing to go to those extremes,
right? And then third, sadly, child molestation did occur and unfortun-
ately to this date, the same thing. You wouldn't be willing to report
a felony crime.  And so those are all themes that fall into a general
disregard for following the law. So no matter what it is, if a law
is broken, it should be reported.  And it's there for a reason, right?
We have rules and laws for a reason. And so, um, the District Attorney,
you know, thought that, uh, yeah, anti-police behavior, that is an
issue, right? You can't blame them. You can't uh use that as an excuse.
It's another issue where you really need to think about and deep --

dig deeper into, you know.  But you still have a lack of programming,
so you're on the right pace. Keep programming, figure out deep triggers,
coping skills, and get into a leadership position, right?  You're 54
years old.  You're mature. You see the younger ones that are around
you. And a lot of your classes, if you learn and internalize concepts
and programs, and you facilitate, that makes it even better for you
because then you -- we know that you have internalized these programs.
You don't just memorize something and come in here and just spout it
out. Now they're real, and the're unique to you individually. Does
that make sense? Did you want to add anything, Deputy Commissioner?"

112. GARCIA:  "Uh, just that I concur with the decision to, uh, deny
parole today. And, uh -- but keep working. Keep working."

113. GUITERREZ:  "Keep growing. You're in the right -- you're on the
right path. You just need to put all of this together. Okay?  So the
time is now 12:36 p.m. Thank you everyone who participated. this meeting
-- or this hearing is adjourned."

THE WRONG PAROLE DETERMINATION PROCESS:

BOARD OF PAOLE HEARING FOR DECEMBER 7, 2017:

112. Page 10.  COMMISSIONER TAIRA: "So Mr. Brown we are here to deter-
mine your suitability for paole. We're not here to reconsider the
finding of the trial or Appellate Courts of either case, both the
life -- uh, the life crime that you were originally incarcerated for
or the subsequent parole violation, the possession of a firearm. We're
not here to retry the (inaudible) uh, what we are here to do is, uh,
determine your suitability for paole, uh, via the consideration process.
Um, we will consider a number of factors including the nature of your
-- your crime, your criminal -- your social history, uh, your institu-
tional-

16

Page 11.:  programs and adjustments, and your Parole Plans.  Once the Panel is finished with questions, the Attorneys will have clarifying questions and give their Closing Statements,  and we do ask that closing statements be no more than 10 minutes. We'll invite you to make a closing statement to the Panel before we recess and deliberate. We'll come to the decision, bring you back in the room and announce it to you."

113. PETITIONER:  "All right."

114. TAIRA:  "Okay."

115. PETITIONER: "All right."

116. TAIRA: "Any questions about the format todate, it's very similar to your other hearings?  You look like you have a question."

117. PETITIONER:   "Yeah I was just, well based on the 2275 Code and I've read two different 2275 Codes, and -- and they're basically two procedures, and so I was just wondering which 2275, 300.1 procedure that we're following, that's all --"

118. TAIRA:  "Okay."

119. PETITIONER:  "--just for clarification."

120. TAIRA:  "All right, we'll take a recess and you can talk with your Attorney about that. "

121. PETITIONER:  "No I don't --"

PAGE 12.:  "TAIRA:  No?"

122. PETITIONER: "No I was addressing it -- excuse me, forgive me, I'm sorry, from the Court of Regulations, I have the paper here and I remember when I came at my last hearing --"

123. TAIRA:  "Mm-hmm."

124. PETITIONER: "-- Commissioner Roberts said -- he said we're following the Code of 2275C. "

125. TAIRA:  "Oh that was the Reconsideration?"

126. PETITIONER:  "Yeah the code."

127. TAIRA:  "Yeah, the reconsideration process?"

128. PETITIONER:  "Yes -- yes."

129. TAIRA:  "Yeah you're here for reconsideration for paole, and that's why you're here."

130. PETITIONER:  "Yes, I was understanding -- I was explaining the code. There are codes, two different codes.  There is a code in the Division 2 Code, and then there's the new code that they have, and I want -- I was addressing to you, I was asking for clarification which code am I under. Am I under the old code or am I under the new code?"

131. TAIRA:  "There is -- 3001 is--"

132. PAGE 13.:  "a broad section, because there is a number of hearing that you would go through, once your, um, arrested or violated, you go in front of the court, and there is a 3001 hearing involved with that to determine whether you did it or not --"

133. PETITIONER:  "Mm-hmm."

134. COMMISSIONER O'HARA:  "--whether there was good cause, and then, within the year of a good cause finding, we have another hearing to see whether you're a danger to society --"

135. PETITIONER:  "Mm-hmm."

136. O'HARA:  "-- or not based on the violation whether it relates to your commitment offense and they look at a lot of stuff, and they've been through that already --"

137. PETITIONER:  "Mm-hmm."

138. O'HARA:  "-- and then if that is found then you fall into this -- this -- I don't even -- hearing cycle where each year you come

up in front of us for basically a parole hearing."

139. PETITIONER:  "Mm-hmm."

140. O'HARA:  "The only real difference is that we can only deny you one year."

141. PETITIONER:  "Mm-hmm."

142. O'HARA:  "Now you mentioned two --"

PAGE 14.:  "-- codes, but you didn't tell us any specifics about the differences, so you may be talking about something very, very old or something new, what is -- what is your question."

143. PETITIONER:  "Un, the language of what the old code speaks on and then the language of the new code, it speaks different."

144. O'HARA:  "But you got to -- you got to be --"

145. PETITIONER:  "All right the old code said step -- talks about just a violation of parole under the guidelines and the procedures of 3000.1, and I was wondering because I came to prison under that code, did I fall under that code or because of the new 2000 -- the realignment of the amendment code, of now the proposi -- 3000.8 code, now it's written different on how the proceedings -- you fall up under, and I just want to know for clarification if I fall up under the new because I know when the Commissioner read the last code under 2275, he didn't specifically say which way I was up under, so I just want to know for clarification do I fall up under the new."

146. O'HARA:  "My guess is -- is -- is we're following the new code. We're going to have an old hearing for you today, we can only deny you one--"

PAGE 15.:  "--year, and since I don't have any specifics from you what's the old and what's the new, and off the top of my heard, I

couldn't say, you know, this one is, what the slight differences are,

but you know, the fact is -- is that the Board has won almost every

single case having to do with retroactivity when we went to denial

lengths and things like that, everybody said, no you can't give me

those denial lengths, because I came in at this time before those

denial lengths. We've won all those cases, so -- so, um, I'm not giving

you legal advice, but we're going to use the one, basically you're

going to get a full hearing today."

DECISION DENYING PAROLE:

147. TAIRA: "Today is December 7, 2017. The time is 7:07 p.m. We
are reconvening at this hearing for pronouncement of the Panel's decision.
All parties present when we recessed are again present. Mr. Brown
-- this is the Subsequent, uh, Reconsideration hearing for Mr. Rodney
Brown. Mr. Brown was received into the Department of Corrections and
Rehabilitation for his life crime on February 3, 1986 from the County
of Los Angeles, Case Number 8392650, controlling offense, uh, Penal
Code Section 187 murder in the second degree with a 15-year to life
sentence. The minimal Eligibility Parole Date November 10, 1993.
Mr. Brown was found suitable for parole by the Board of Parole Hearings
on July 10, 2012 and subsequently paroled. He was returned to parole
-- returned from parole back into the Department of Corrections and
Rehabilitation on or about Agust 4, 2016. The parole violation was
Penal Code section 2900, possession of a firearm with a prior felon
-- violent felony conviction. The case was out of San Bernardino
County. The case Number is FMV150275. Conviction was July 19, 2016.
The crime was committedJuly 18, 2015. Mr. Brown the Panel finds you
unsuitable for parole."

148. The Factors taken into consideration to reach denial was:

A)   YOUTH OFFENDER review under Penal Code Section 3041.5;

B)   THE CAPACITY OF REASONS FALL UNDER RETRYING PETITIONER, FOR THE
     OLD AND THE NEW CASE (CRIMINAL CONVICTIONS.); and

C)   THE COMMISSIONERS  HAD PERSONAL INTERESTS TO DENY PAROLE BECAUSE
     PETITIONER "DISRESPECTED" THE COMMISSIONERS THAT RELEASED HIM
     IN THE FIRST PLACE SAYING ON THE RECORD:  "The Panel decided this
     gentleman is not an unreasonable risk to society, so let's put him
     out on supervised release. Keep -- somebody keep an eye on him
     just to make sure our decision is correct, and YOU PROVED THEM
     WRONG," Stated in part (DECISION PAGE 89: 8-12.)

148. The Determination process used was arbitrary, because after saying
great weight was given to the Youth Offender Factors: "When an inmate
has committed his controlling offense under Penal Code Section 3051
prior to obtaining 23 years of age, the Board shall give great weight
to the diminished culpability of juveniles as compared to adults,

the Hallmark feature of Youth, and any subsequent growth and maturity in reviewing suitability under Penal Code Section 3041.5 (Page 82:12-19.)

149. At Page 91:4-6, the Board states: "And you're not going to have the benefit of Youth Offender, because that had to do with your Original commitment offense." Which is a highly contradictive process; the use of information by the Board demonstrates a clear process to manipulate the process and standards of review to benefit themselves in their personal interests to deny parole for reasons other than the law.

150. In the Previous before the December 7, 2017 hearing, on January 10, 2017.the standard of review used to deny Petitioner's Parole was premised upon the erroneous standard Title 15, Section 2275C (PAGE 8:11-20.)

151. Over the course of all the procedures used, over the years, 2016, 2017, 2018, and 2019, They have used a different process at each hearing, and never performing the true and correct process, that Petitioner was entitled to. But instead suffered a"Arbitrary process that violated his due process rights. Hayward v. Marshall (9th Cir. 2010) 603 F.3d 546, 555; Pearson v. Muntz (9th Cir. 2010) 606 F.3d 606, 608-611; see also Ruvalcaba v. Curry (N.D. Cal. 2010) 708 F.Supp. 2d 977, 984. Because the Board's cause for denial of parole was based solely on the Petitioner's commitment offense. They failed to apply the denial to standarized factors such as: Whether the petitioner is a CURRENT Threat to public safety. (Since the incident was a Family Dispute, and isolated incident, it diminishes culpability to the public threat; another factor is that the Petitioner's new offense was based upon a heat of passion issue where the son and wife were having an affair, sons life was in danger by someone with a gun, and the violation Possession of Firearm, is rooted out of the belief that the gun was for protection. The gun was not to go out and commit random crimes.); next the Board denied Petitioner's parole without asserting that the Petitioner's Demeanor, lack of remorse or mental state was a strong factor for denial. They noted that Petitioner had engaged in signifcant rehabili-

tation and that the Criteria qualified for parole: "Parole plans
are increasingly realistic. Mr. Brown has arranged for, uh, the Amity
House, a Transitional Home, and he understand the, uh, the need for
that. He also has shown the ability to engage in Institu -- positive
Institutional activities. He's done a number of programs, self-help
programs, um, during his incarceration that we talked about on the
record. More recent ones had to do with anger, criminal thinking.
He's don CGA. He talked about the Family Relations Workshop that was
helpful for him.  Um, ultimately the Panel found that these were out-
weighed by the circumstances that tended to show unsuitability and
suggest that if released, Mr. Brown continues to pose a threat to
public safety. The --"  (Page 86:11-25;) "commitment offense for
which he was committed for the life crime was, uh, just a horrific
and, um, vicious crime, uh, done when he was 18. A gang-related drive
by shooting that resulted in the murder of, uh, of the victim." (Page
87:1-5.)  It is clear that commitment offense was sole cause for denial
on the record.  The matter used that the Board exercised lacks and
or falls below the standard of "SOME EVIDENCE."  As the decision to
deny...parole was personal, as Petitioner was informed that he dis-
respected the BPH that released him.

152. The Board failed to adequately and sufficiently analyze all the
various suitability and unsuitability factors in light of his true
case circumstances. In re Lewis (2009) 172 Cal. App. 4th 13, 28-29
[91 Cal. Rptr. 3d 72].

153. Under the Correct standard of review, applicable to Petitioner's
original offense, the standard is under, Title 15, §2275(a)-(c).

(a) States: Implementation of Penal Code Section 3000.1. (a) General.
As required by Penal Code Section 3000.1, when parole is revoked for
any prisoner sentenced under Penal Code section 1168 for any offense

of first or second degree murder with a maximum term of life imprison-
ment shall be given a hearing as provided in Penal Code Section 3041.5
and 3041.7 within 12 months of the date of any revocation of parole
to consider the release of the inmate on parole.

Section (c) States: Disposition. At this hearing, the panel shall
release the prisoner within one year of the date of the revocation,
unless it determines that the circumstances and gravity of the parole
violation are such that consideration of the public safety requires
a more lengthy period of incarceration, or unless there is a new prison
commitment following a conviction.  If the panel concludes that a
more lengthy period of incarceration is warranted, then notwithstanding
the provisions of paragraph (2) of subdivision (b) of section 3041.5,
there shall be annual parole consideration hearings thereafter, unless
the person is otherwise ineligible for parole release. Section 12838.4,
Government Code; and Sections 3052 and 5076.2, Penal Code. Reference:
Section 3000.1.

154. Pursuant to Title 15, section 2646.1 VIOLATIONS AND LENGTH OF

CONFINEMENT. States in relevant part: "The following are parole revoca-

tion assessment guidelines when good cause has been found on a single

parole violation charge. §2646.1(r)(5) (10 to 12 months) FOR POSSESSION

OF A FIREARM."

155. During the 2019 Parole Determination process, Commissioner Garcia

violated the parole process by asking Petitioner to admit to guilt

of criminal offenses not part of his conviction, by asking him: "AND

WHAT OTHER CRIMES DID YOU COMMIT IN THIS CASE." However, Pursuant

to Title 15, Chapter 3, Article I, 42236 it states: "The facts of

the crime shall be discussed with the prisoner to assist in determining

the extent of personal culpability. The board shall NOT require an

admission of guilt to any crime for which the prisoner was committed."

Stated in relevant part.

   THE BOARD OF PAROLE HEARINGS DISCHARGED RESPONSIBILITIES IN BAD-
   FAITH.

156. In criminal case, once the adjudication process has ceased and the
rehabilitative stage commenced it becomes the responsibility of
the BPH to determine, in it's descretion the appropriate terms and
conditions for the release of the offender to society; At this stage,
due process only requires that the BPH discharge its responsibilities
in good faith, neither arbitrary nor capricious, and that judicial
review remains available to correct abuses of discretion.

See In re Tucker (Cal. June 24, 1971), 5 Cal. 3d 171, 95 Cal. Rptr. 761, 486 P.2d 657, 1971 Cal. LEXIS 244.

157. Good Faith is defined as: An action in good faith, an action in which a judge was authorized to take cognizance of equitable considerations in rendering his or her decision.

158. BAD FAITH:    The antithesis of good faith; a state of mind affirmatively operating with a furtive design, with a motive of self interests or ill will, or for an ulterior purpose.

159. At every hearing that Petitioner went to, in 2017, 2018, and 2019, he was told that he "DISRESPECTED THE COMMISSIONERS THAT LET YOU OUT" on parole in the first instances. And that directly inform him became of this "disrespect" he will not be released again. This is arbitrary:

160. ARBITRARY:    A decision rendered by a court, or judge, or other office exercising judicial functions which is based upon the will of the officer alone, and not upon any course of reasoning and exercise of judgment.

161. The capacity of the BPH review in all proceedings diminstrates a pattern of misconduct aimed at arbitrary denials of parole, their decision and reasoning is unsound, deciding by whim or caprice; discretion exercised erroneously. And thereby is Arbitrary discretion, in which they used in their discretion which amounts to an abuse of discretion.

162. The Panel failed to conduct a hearing to be considered for release. The Panel conducted a hearing under P.C. § 3051 Youth Offender; the panel further erroneously determined that there was a nexus because Petitioner's prior life crime involved use of a firearm and Petitioner's new commitment offense and parole violation involved a gun.

The panel stated that at the time petitioner was a public safety concern and required that additional time was needed before releasing the parolee back in society.

163. Petitioner has a cognizable liberty interest in release on parole protected by due process.

164. The Board's determination process to deny parole lacks and or falls below the some evidence standard, because the denial of parole was based on ulterior motives and was highly arbitrary, in violation of due Process and Equal Protection of the laws. U.S. Const., Amend. 14; Calif. Const., Art. I, § 7.

165. The Supreme Court clarified the proper scope of the court's review of the Board's or Governor's decision regarding parole suitability. The Court stated:  (1) the essential question is whether the inmate currently poses a threat to public safety; (2) the question is posed first to the Board and then to the Governor, who draw the answer from the record, including the facts of the offense and the inmate's progress and insight into past behavior; (3) the inmate has the right to decline to participate in a psychological evaluation and the Board hearing without the decision being held against the inmate, but that decision may not limit the Board or Governor in the evaluation of all of the evidence; (4) judicial review is under the highly deferential "some evidence" standard, and the Board's or Governor's decision is upheld unless arbitrary or procedurally flawed - only a modicum of evidence supports the parole suitability decision; and (5) the reviewing court does not ask whether the inmate is currently dangerous - rather the court asks if there is a rational nexus between the evidence and the determination of current dangerousness.  "The court is not empowered to reweigh the evidence." 53 C4th at 220. (In re Shaputis (2011) 53 C4th 192 (Shaputis II).

166. When a reviewing court determines that the Board's decision to deny paole was not supported by "some evidence" standard, it should direct the BPH to conduct a new hearing consistent with due process and the decision of the court.  In so holding, the Supreme Court resolved a conflict among the courts of appeal; after Lawrence and Shaputis, some courts ordered the BPH to find the prisoner suitable for parole unless new evidence supported a determination of current dangerousness. These orders improperly infringed on the authority of the BPH and its statutory duty to consider all factors in the full record. (In re Prather (2010) 50 C4th 238 [50 C4th at 253.]

167. BPH DENIED PETITIONER HIS HEARING RIGHTS, BECAUSE OF IMPROPER PAROLE DETERMINATION PROCESSES AS DESCRIBED ABOVE. Penal Code §3000.1 proceedings, the parolee must be provided all hearing rights in accord-

ance with Penal Code §3041.5, with the exception od subdivisions (b)(3) and (d), and must be provided all hearing rights in accordance with Penal Code §3041.7 and 15 Cal. Code of Regs. §§2245-2256 or, for multi-jurisdiction parolees, in accordance with §2367 as relevant. 15 Cal. Cod. Regs. §2275(h) (proposed).

168. The Board of Parole Hearings does not have an administrative appeals process. To appeal a decision of the BPH, the parolee needs to file a write of habeas corpus in the Superior Court. CAL. CRIM. PRO. §47.52. Because there is no administrative review, there is no need to exhaust administrative remedies before seeking review. 15 Cal. Code of Regs. §§2050-2052.

PETITIONER IS UNLAWFULLY RESTRAINED:

169. Habeas Corpus. There is no direct review of an adverse parole decision. However, judicial review may be obtained by filing a petition for writ of habeas corpus. Penal Code §§1473-1508; Cal. Rules of Ct. 4.551; In re Powell (1988) 45 C3d 894, 903. Under Penal Code §1743(a), "[e]very person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."

170. On January 10, 2017, Petitioner was told by Commissioners Roberts, Denvir, and Francisco, that they were offended "personally" that Petitioner had disrespected, and proved previous BPH commissioners wrong, regarding releasing him. That "you are not leaving anytime soon." This demonstrates a predisposition to deny parole based on prejudice, arbitrary and capricious.

171. On December 7, 2017, BPH Commissioners: Taira, and O'Hara made similar remarks off the record. They indicated that Petitioner had disrespected their fellow Commissioners and that it "was unacceptable, and that Petitioner would not "get out any time soon." Another imposition of predisposition to not only deny the present parole, but all future parole determination process. This is arbitrary, capricious, and discriminatory, and violates the Due Process Clause of the U.S. 14th Amend; and Calif. Const., Art. I, §7.

172. On December 5, 2018  Commissioners: BARTON, AND KLINK Made off the record comments regarding Petitioner "disrespected" the Commissioners and that he would not be released any time soon. That Petitioner was going to remain in prison and denied BPH "TIMES TEN." Stated by Barton and Klink, as stated by Commissioner Barton: "You know -- when we see guys fail that have been given grants, that makes us second-guess our decisions."

173. PETITIONER:  "I understand that."

174. BARTON:  "May make it tougher to give somebody else a second chance. So, that's human." stated in relevant part. (Page 15:7-13.) This line of reasoning of the Commissioner implies the decision process is "human" based and not Legal based at all. Even after the Commissioner stated on the record the above, and to Petitioner off the record, he realized this was erroneous and tried to clean it up by stating: "Now, the good thing is, we're all trained to overlook that and compart-mentalize.  So, it really doesn't enter in to my decision-making."(P.15:13-15), It should be noted that the Commissioner raised this issue at random, so he was speaking his personal mind, realized he overstepped and self-corrected, but nevertheless, made it evident what the Commissioners were actually thinking.

175. BARTON:  "Unfortunately when I'm looking at your writings that you submitted today and you talk about pride and ego and how that's a part of your personality -- it's still a part of your personality because your focus is still on you -- not on the fact that you took something that can never be returned -- a human life. That should be what motivates you. And it's just not. It's not what you think about." Stated in part (Page 147:14-19.)

This above line of logic demonstrates upon the face of the record that two serious flawed actions in the Petitioner's hearing ocurred

1)   That the Commissioner(s) were taking the facts of his case alone as the basis for his denial of parole; and

2)   That, no evidence exist regarding the Petitioner being prideful "still" exists, while the context of what Petitioner was conveying to the Commissioners is that it had made a self-identification of the issues that had contributed to his conviction, the NEW CONVICTION NOT THE OLD MURDER CASE. Was pride and ego, and Petitioner was explaining that these are what he had been working on, since he realized this was a problem.  There is no evidence that the commissioner relies upon where he declares that Petitioner is still prideful and has ego issues, because he only thinks about himself.

176. PETITIONER:  "Because I -- I know now to think when pride flares up. I understand how if--"  (page108:24-25); "situations arise like that know what to do. I have no pride issues to allow myself to be distracted to let something go. A crime is a crime no matter of a guy gets away -- you still must report it -- if you're a law-abiding citizen.  Sometimes there's times when you can have to -- uh -- uh -- deal with the police.  It depends on the circumstances. And in today, I know how thoroughly to evaluate and -- and look at these situations or circumstances.  And if something does arise to that occassion, I don't have a problem."

The  Petitioner made valid comments to address circumstances regarding pride and how he learned to  deal with it. Accordingly, Pride exist in HUMAN NATURE, and is a natural element in all human life, Petitioner was expressing how he now learned to deal with this natural consequence. Yet, pride in of itself, or self-centeredness even if true, does not

serve as a rational and reasonable basis to deny parole because Ego is a way of expression that is protected under the First Amendment of the United States, and thereby, Petitioner would be suffering retaliation for exercising his rights to expression. Whether one likes the expression or not. Expressions, speech, and even mannerisims constitute functions protected under the First Amendment of the United States Constitution. [AMENDMENT I.  Congress make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.]

EX POST FACTO VIOLATIONS:

177. BPH provided a flawed review that manifested ex post facto violations in that the standards of review that was applied to Petitioner's case created higher standards of that rationally acquired by the HUMAN process working on PERSONAL INTERESTS and alternating and multiple incorrect  standards of review that all had nothing to do with the correct standard of review. Including but not limited to using "Disrespect" the BPH by coming back to prison. Peugh v. United States, 569 U.S. 530, 533, 133 S. Ct. 2072, 186 L.Ed 2d 84 (2013).

178. The application of former Penal Code §2933(c) and regulations to preclude credit restoration to inmates whose acts of misconduct were comitted before the statutory amendment and the promulgation of the regulations violated ex post facto clauses of the federal constitution and state constitutions [In re Lomax (1998) 66 Cal. App. 4th 634. 642-648, 78 Cal. Rptr. 2d 220, citing Weaver v. Grham (1981) 1450 U.S. 24, 101 S. Ct. 960, 67 L.Ed 2d 17.

GROUND ONE:
BREACH OF PLEA AGREEMENT, PUNISHMENT IS EXCESSIVE OF AGREEMENT,
AND PETITIONER WAS MISLEAD TO BELIEVE THAT HIS PAROLE WOULD BE REIN-
STATED AFTER THE TERM ON THE PLEA CONTRACT. INSTEAD HE WAS BY FALSE
PRETENSE SUBJECTED TO A LIFE IN PRISON ON HIS ORIGINAL LIFE SENTENCE.
THUS PROSECUTOR FAILED TO ENFORCE CONTRACT.  CALIFORNIA COURT OF
APPEALS. 216. CAL. APP. 4th 725, IN RE TIMOTHY N.  MAY 22, 2019; U.S.
138 S.CT. 4:: KERNAN V. CURO. NOV. 6, 2017.
PETITIONER INCORPORATES PARAGRAPHS 1-179, AS THOUGH  THEY WERE STATED
HEREIN FULLY.

## STATEMENTS OF THE CASE

1.   An  negociated plea agreement is a form of contract and it is
interpreted according to general contract priciples. The fundamental
goal of contractual interpretation is to give effect to the mutual
intention of the parties.  However,"[e]vidence of the undisclosed sub-
jective intent of the parties is irrelevant to determining the contract-
ual language."  It is the outward expression of the agreement, rather
than a parties unexpressed intention, which the Court will enforce.
"[I]nterpretations of [a plea agreement] contract must be based on
an objective standard in which [the defendant's] 'reasonable belief
control.'"  Additionally as representatives of the government it is
particularly important for a prosecutor to live up to any and all
promises made [or implied] that persuade a defendant to give up his
constitutional rights to trial and plead guilty to a criminal offense.
People v. Mancheno (1982) 32 Cal. 3d 855, 860 [187 Cal. Rptr. 441,
654 P. 2d 211].

2.   Petitioner was deliberately misled to believe that by accepting
the plea agreement he would be reinstated on parole.  Had petitioner
known that by taking the plea agreement that he would be subjected
to life in prison he would have taken his case to trial.

3.   Petitioner has a right to be adequately informed of the consequences
to accpting the plea.  The Petitioner's attorney, the prosecutor,
and the court judge did not tell petitioner that by accepting the

plea he would be subjected to his original life in prison term.  In fact, the Court reinstated Petitioner on parole (See exhibit-[1]) which further validated petitioner's controlling belief that after he served his plea agreement sentence, he would be reinstated.  Yet, had petitioner known or was told by the court that petitioner would be subjected to his original life sentence, he would have withdrawn the plea agreement and proceed to trial.

4.   Petitioner's controlling belief and motivation to take the plea was that, after the plea sentence was served, he would be reinstated on parole, that is why he gave up his rights to trial, confront accusers, and establish a defense.

4.                 ARGUMENT OF ABOVE

[Emphasizing due process and the integrity of the plea bargaining system require the State to "keep it's word when it offers inducements in exchange for a plea of guilty"] Court's expect prosecutors to honor their promises eventhough prosecutors are often overwhelmed and sometimes overworked and sometimes make innocent mistakes in the course of plea bargaining process; A "heavy workload may well explain [such mistakes], but it does not excuse them." Santobello v. New York, supra, 404 U.S. at P. 260. A prosecutor's innocent mistake not to explain or give notice of consequences is insifficient basis to justify government's breach of plea agreement.

5.   United States Supreme Court, 138 S. Ct. Kernan v. Cuero, November 6, 2017.  [LEDHR2] [2] a defendant may not be bound to a plea agreement following a prosecutorial breach of an enforceable provision  of such an agreement. ID 262, 92 S. Ct. 495, 30 L.ED 2D 427; ID., at 262-263, 92 S.Ct. 495, 30 LED 2d 427; 827 F.2d at 891,n.14 (Quoting Santobello, supra, at 267, 92 S.Ct. 495, 30 LED 2d 427); Also see. People v. Shelton

(2006) 37 Cal. 4th 759, 767, [3] Cal. Rptr. 3d 354, 125 P.3d 290];
Selahi v. Surfside III Condominium Owner Assn. (2011) 200 Cal. App.
4th 1146, 1159 [132 Cal. Rptr. 3d 886]; People v. Tuscano (2004) 124
Cal. App. 4th 340, 345 [20 Cal. Rptr. 3d 923].

## CLOSING STATEMENT

6.   Accordingly, Petitioner did not receive the sufficient notice
of consequences to the plea agreement, regarding him being subjected
to his original life in prison sentence. At all Board of Parole Hearings
in 2017, 2018, and 2019 the District attorney was there opposing Petiti-
oner's release on parole. This is a direct and specific breach of
the agreement, that he would be released on parole if he accepted
the plea agreement. According, the breach of contract nullifies the
agreement, and thereby constitutes an illegal restraint, and plea
agreement should be deemed null and void, and reverse Petitioner's conviction
for the felon in possession of a firearm. And reinstate as a remand
and reset for trial in the above matter, in the interests of justice.

GROUND TWO:
PETITIONER SUFFERS VIOLATIONS OF RIGHTS PURSUANT TO EX POST FACTO VIOLATIONS, WHERE THE USE OF AN INCORRECT NEW STATUTE CAUSES PETITIONER TO SUFFER A SIGNIFICANT INCREASE IN PUNISHMENT. U.S. CONST., AMEND. I, §9, Cl. 3; CAL. CONST., ART. I, §9).

PETITIONER INCORPORATES PARAGRAPHS 1-179 AS THOUGH THEY WERE STATED FULLY HEREIN.

### PROHIBITED ACTION

1.    Ex post facto laws are prohibited by both the federal and the state constitutions, including those that retroactively modify the time of discharge from case to the substantial detriment of a defendant, thereby, in effect increasing the punishment previously imposed for the crime.  In re Dewing (Cal. March 4, 1977), 19 Cal. 3d 54, 136 Cal. Rptr. 708, 560, P.2d 375, 1977 Cal. LEXIS 116.

### STANDARD EX POST FACTO

2.    Under the United States Ninth Circuit Court Of Appeals Ruling,

724 Fed. Appx 567:: U.S. V. ROSAS - DOMINGUEZ, Feb. 7, 2018 Declared:

"There is an ex post facto violation when a defendant is sentenced under

U.S, sentencing guidelines promulgated after he committed his criminal

acts and the new version provides a higher applicable guidelines senten-

ncing range than the version in place at the time of the offense."

Peugh v. United States, 569 United States 530, 533, 133 S. Ct. 2072,

186 L.Ed 2d 84 (2013).

3.    PENAL CODE, §3000.1 LIFE PAROLE FOR FIRST OR SECOND DEGREE MURDER OFFENSE; DISCHARGE; REVOCATION.    STANDARD APPLICABLE TO PETITIONER.

(a) In the case of any inmate sentenced under Section 1168 for any offense of first or second degree murder with a maximum term of life imprisonment, the period of parole, if parole is granted, shall be the remainder of the inmate's life. (b) Notwithstanding any other provision of law, when any person referred to in subdivision (a) has been released on parole from the state prison, and has been on parole continuously for seven years in the case of any person imprisoned for first degree murder, and five years in the case of any person imprisoned for second degree murder, since release from confinement, the board shall, within 30 days, discharge that person from parole, unless the board, for good cause, determines that the person will be retained on parole.  The board shall make a written record of its determination and transmit a copy of it to the parolee.    (c) In the event of a retention on parole, the parolee shall be entitled to a review by the board each year thereafter.  (d)THERE SHALL BE A HEARING AS PROVIDED IN SECTION 3041.5 AND 3041.7 WITHIN 12 MONTHS OF THE DATE OF ANY REVOCATION OF PAROLE TO CONSIDER THE RELEASE OF THE INMATE ON PAROLE, AND NOTWITHSTANDING THE PROVISIONS OF PARAGRAPH (2) OF SUBDIVISION (b) OF SECTION 3041.5, THERE SHALL BE ANNUAL PAROLE CONSI-DERATION HEARINGS THEREAFTER, UNLESS THE PERSON IS RELEASED OR OTHERWISE

INELIGIBLE FOR PAROLE RELEASE. The panel or board shall release the
person within ONE YEAR OF THE DATE OF REVOCATION unless it determines
that the circumstances and gravity of the parole violations are such
that consideration of the public safety requires a more lenghty period
of incarceration or unless there is a new prison commitment following
the conviction. (e) The provisions of Section 3042 shall not apply
to any hearing held pursuant to this section. Pen. C. §3000.1 stated
in full.

## STANDARD FOR DETERMINATION OF SUITABLITY

4.    Pursuant to Title 15, Article 5, §2281(a) and (b) State:

(a) General. The panel shall first determine whether a prisoner is
suitable for release on parole. Regardless of the length of time
served, a life prisoner shall be found suitable for and denied parole
if in judgment of the panel the prisoner will pose an unreasonable
risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available
to the panel shall be considered in determining suitability for parole.
Such information shall include the circumstances of the prisoner's:
social history; past and present mental state; past criminal history,
including involvement in other criminal misconduct which is reliably
documented; the base and other commitment offenses, including behavior
before, during and after the crime; past and present attitude toward
the crime; any conditions of treatment or controle, including the
use of special conditions under which the prisoner may safely be released
to the community; and any other information which bears on the prisoner's
suitability for release. Circumstances which taken alone may not firmly
establish unsuitability for parole may contribute to a pattern which
results in a finding of unsuitability.

Under Section (d): "Circumstances Tending to show suitability. The
following circumstances tend to show that the prisoner is suitable
for release. The circumstances are set forth as general guidelines;
the importance attached to any circumstances or combination of circum-
stances in a particular case is left to the judgment of the panel.
Circumstances tending to indicate suitability include: (1) No Juvenile
Record. The prisoner does not have a record of assaulting others as
a juvenile or committing crimes with potential of personal harm to
victims. (2) Stable Social History. The prisoner has experienced
reasonably stable relationships with others. (3) Signs of Remorse.
The prisoner performed acts which tend to indicate the presence of
remorse, such as attempting to repair the damage, seeking self help
for or relieving suffering of the victim, or the prisoner has given
indications that he understands the nature and magnitude of the offense.
(4) Motivation for Crime. The prisoner committed his crime as the
result of significant stress in his life, especially if the stress
had built over a long period of time. (5) Battered Woman Syndrome.
At the time of the commission of the crime, the prisoner suffered
from Battered Woman Syndrome, as defined in section 2000(b) and it
appears the criminal behavior was the result of that victimization.
(6) Lack of Criminal History. The prisoner lacks any significant history

34

of violent crime.   (7)  Age.  The prisoner's present age reduces the probability of recidivisim.  (8) Understanding and plans for future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.  (9)  Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

5.    STANDARD THAT BPH USED AT PETITIONER'S PAROLE HEARING, WHICH VIOLATED EX POST FACTO, BY USING NEW STANDARDS THAT INCREASE PUNISHMENT SIGNIFICANTLY.

6.    YOUTH OFFENDER CONSIDERATION (Dec. 7, 2017 BPH REVIEW PAGE 83:16-18. Pages 83-86.)

7.    Calif. Penal Code, §3000.08(a) States:  A person released from state prison prior to or on  or after July 1, 2013, after serving a prison term, or whose sentence has been deemed served pursuant to Section 2900.5, for any of the following crimes is subject to parole supervision by the Department of Correctionals and Rehabilitations and the jurisdiction of the court in the county in which the parolee is released, resides, or in which an alleged violation of supervision has occurred, for the purpose of hearing petitions to revoke parole and impose a term of custody:  (A) A serious felony as described in subdivision (c) of Section 1192.7.  (2) A violent felony as described in subdivision (c) of Section 667.5.  (3) A crime for which the person was sentenced pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12.  (4) Any crime for which the person is classified as high-risk sex offender. (5) Any crime for which the person is required, as a condition of parole, to undergo treatment by the State Department of State Hospitals pursuant to Section 2962.  (b) States:  Notwithstanding any other law, all other offenders released from prison shall be placed on post release supervision pursuant to Title 2.05 (commencing with Section 3450).

EFFECTIVE JANUARY 1, 2016 it state under Section 3000.08 (h) Notwithstanding any other law, if Section 3000.1 or paragraph (4) of subdivision (b) of Section 3000 applies to a person who is on parole and the court determines that the person has committed a violation of law or violated his or her conditions of parole, the person on parole shall be remanded to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration.

8.    Accordingly, since BPH fails to use the New charge as the basis for the BPH review, and construes the Old murder charge as the controlling offense and for BPH consideration; Plaintiff is then legally under the OLD PROVISION OF THE LAWS, in which state: "(5) ANY CRIME FOR WHICH A PERSON IS REQUIRED, AS A CONDITION OF PAROLE, TO UNDERGO TREATMENT BY THE STATE DEPARTMENT OF STATE HOSPITALS PURSUANT TO SECTION 2962." (b) States:  "Notwithstanding any other law, all other offenders released from prison shall be placed on post release supervision pursuant to Title 2.05 (Commencing with Section 3450)."

9.    Under the Old provision which Plaintiff is under pursuant to the Old charge, California Penal code, §3000.08 States at as a whole:  "PAROLE SUPERVISION FOR ENUMERATED FELONS; POSTRELEASE SUPERVISION FOR ALL OTHER OFFENDERS; APPROPRIATE CONDICTIONS FOR VIOLATIONS; MODIFICATIONS OF PAROLE; "FLASH INCARCERATION"; AUTHORITY OF COURT." Subdivision (d) States:  "Upon review of alleged violation and

a finding of good cause that the parolee has committed a violation of law or violated his or her conditions of parole, the supervising parole agency may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions for parole violations, including flash incarceration in a city or county jail. Periods of "flash incarceration," as defined in subdivision (e) are encouraged as one method of punishment for violations of a parolee's con-dictions of parole. This section does not preclude referrals to a reentry court pursuant to Section 3015.

## FACTUAL ARGUMENT/OBJECTIVE

a.    Accordingly, Plaintiff committed a new crime while on parole, accepted a plea agreement for two years, the Court also REINSTATED PLAINTIFF'S PAROLE. After the two years for the new crime was served, plaintiff should have gone back on supervised parole, because he is no longer under the provisions of the old crime. He was paroled and thereby, the doctrine that governs his PAROLE VIOLATION as shown above, requires that CDCR punish Plaintiff with no more than a Flash Incarceration, and or place him on an intensive parole, but nevertheless, reinstate his parole, since his new conviction sentenced was ultimately served.

b.    The Expost Facto violation begins where the New provisions of law, are basically triggered by Proposition 57, acting under the new provisions of parole determination process as to: EFFECTIVE JANUARY 1, 2016 IT STATES UNDER SECTION 3000.08 (h) NOT-WITHSTANDING ANY OTHER LAW, IF SECTION 3000.1 OR PARAGRAPH (4) OF SUBDIVISION (b) OF SECTION 3000 APPLIES TO A PERSON WHO IS ON PAROLE AND THE COURT DETERMINES THAT THE PERSON HAS COMMITTED A VIOLATION OF LAW OR VIOLATED HIS OR HER CONDITIONS OF PAROLE, THE PERSON ON PAROLE SHALL BE REMANDED TO THE CUSTODY OF THE DEPARTMENT OF CORRECTIONS AND REHABILITATION AND JURISDICTION OF THE BOARD OF PAROLE HEARINGS FOR PURPOSE OF FUTURE PAROLE CONSIDERATION.

c.    The second new above provision of law, significantly increases Plaintiff sen-tence and manifests violations of Expost Facto, because under the old law, plaintiff is remanded back on parole after the initial punishment violation or new offense is served or executed. However, under the new law, Plaintiff is subjected to the original life in prison sentence. THE NEW LAW DOES NOT APPLY TO PLAINTIFF'S OLD SENTENCE, because it antidates the new law, and thereby, BPH retains Plaintiff's detainment in violation of the laws, statutes and Constitutions of the State of California and the United States of America, see the United States Due Process Clause of the 14th Amendment; Calif. Const., Art. I, §7.

## CONCLUSION

This Court must agree that the Plaintiff is under the old provisions, and

by applying the previous applicable statute, Petitioner's parole must be reinstated

forthwith in the interests of justice. Whereby, Petitioner requests that this revie-

wing court grant ground two, and ultimately order parole reinstated. Additionally,

since Petitioner remained illegally as detained for an extended period of time, the Court should deem that the extended time in prison constitutes time on parole, and acredited as to such.   Plaintiff's parole should be granted and Ordered by this Court to release Petitioner on parole forthwith.

Respectfully submitted.

GROUND THREE:
THE BOARD OF PAROLE HEARINGS (BPH) ISSUED AN ARBITRARY DICISION
CALIFORNIA COURT OF APPEALS. 232 CAL. APP. 4TH 1421 :: IN RE
YOUNG :: JAN. 13, 2015. THE BOARD DID NOT DULY CONSIDER THE PETITI-
ONER'S INSIGHTS AND STRESS, HIS REHABILITATIVE INSIGHTS AND HIS
BEING TRUTHFUL WITH BPH WHICH WAS WRONGLY ACCOUNTED AS BEING GENERIC.

PETITIONER INCORPORATES PARAGRAHS 1 THROUGH 179 AS THOUGH THEY WERE
STATED FULLY HEREIN.

SUPPORTING FACTS

1.    During the Course of the BPH review with Petitioner, the Petitioner
made statements in his behalf regarding his insights and stress that
led up to the new charge offense that he violated his parole, which
BPH disregarded and failed to provide proper consideration as to
these issues, which denied Petitioner his due process rights to have
all mitigating factors considered because these factors highly contrib-
ute to criteria which plays a significant role in considering release
or deeming him an UNREASONABLE DANGER TO PUBLIC SAFETY.

In his parole review Petitioner stated on the record on December
7, 2017.

"Continue to go out there and live life in society the right way,
be productive.  They are my plans, going out there and socializing
and gathering myself with a support team that's right.  One of my
models is -- my first model is how do you feel about the police,
and if a person says (inaudible) you're not going to be my friend,
because I don't need that -- that way of thinking around me, because
I want to be able to be around people that know how to do the right
thing, because it assures me that I'm doing the right thing when
I do it, and I don't want to have to be in the guilty stage if I've
done something wrong or have to watch my back, because I did the
right thing in society, because I notice that sometimes you can let
that bother you, you can let that take an effect on you." (Page 59:
8-22.)
The petitioner continued to state:   "The same way before I came
in, I had a bank account, I had money saved up. Money management,
it wasn't a problem for me, you know, when I got my job I had direct
deposit, and uh, I had a plan and my goal -- my short term goal was
get a job, A, B, and C, any job, better job, career, and at the Ware-
house, the goal was to become a Supervisor at the warehouse andI'm
going to re-establish those same qualifications that I have in my
to do it the same." (P.66:17-25,)   "correct way, but also hold on
to these tools I've learned, these new ter -- these new tools, and
the old tools I had already utilized before that, that I'm going
to continue to use, because if I would've continued using those tools,
I wouldn't be here and I understand that." (P.67:1-5.)

The Attorney Hall asked Petitioner:  "WHAT DO YOU THINK YOU CAN CONTR-
IBUTE TO THE COMMUNITY TO MAKE AMENDS?" (P.67:15-16.)

Petitioner Responded:  "By helping out going to the, like shelters
(inaudible) shelters being in community activist programs in my communi-
ty, being aware of crime awareness programs and really, uh, they
have a program called Brotherhood Crusade. I would like to volunteer
to those youth like I was doing in prison before, and letting young
men, you know, this is not a life that you want to end up in." (P.
67:17-24."